**Jordan D. Hankey (Bar #266995)**
**Law Office of Jordan D. Hankey**
903 State Street, Suite 205
Santa Barbara, CA 93101
Telephone: (805) 682-3352
Fax: (805) 687-5490
E-mail – jdhankeylaw@gmail.com

Attorneys for Plaintiff Michael B. Stoker

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL B. STOKER,**<br><br>　　　　Plaintiff,<br><br>vs.<br><br>**ANDREW R. WHEELER, DOUGLAS BENEVENTO, RYAN JACKSON, CORRY SCHIERMEYER; and DOES 1 through 20, inclusive,**<br><br>　　　　Defendants. | **Case No.** 2:21-cv-00733-JAK-E<br><br>**PLAINTIFF MICHAEL B. STOKER'S BRIEF IN SUPPORT OF HIS CONTENTION THAT DEFENDANTS WHEELER, BENEVENTO, JACKSON AND SCHIERMEYER WERE NOT ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT [FILED CONCURRENTLY WITH DECLARATION & EXHIBITS)**<br><br>District Judge: John A. Kronstadt |

　　　　Plaintiff Michael B. Stoker ("Plaintiff Stoker") hereby submits the following Brief in support of his contention that Defendants Andrew Wheeler, Douglas Benevento, Ryan Jackson and Corry Schiermeyer (collectively "Defendants") were not acting within the scope of their employment with the United States of America when their defamatory statements were made.

## **FACTUAL BACKGROUND**

　　　　Effective May 20, 2018, Plaintiff Stoker was appointed as the Environmental Protection Agency's (hereinafter referred to as "EPA") Region 9 Administrator. At all relevant times, Plaintiff Stoker diligently and prudently carried out all duties and

functions as the EPA's Regional 9 Administrator. He was never orally reprimanded or written up for job performance related issues. Further, the EPA had a Travel Guidance Policy that was adhered to and followed by all EPA employees. Defendants were aware of the Travel Guidance Policy, knew those rules were being enforced and knew there was no travel that Plaintiff Stoker was involved with that violated that Policy.

Plaintiff Stoker's employment was terminated on February 5, 2020.  That same day, and during usual business hours, Defendant Wheeler issued a parting statement that was customary for the EPA.  Defendant Wheeler's email to EPA's Region 9 Staff stated, "I would like to thank Mike Stoker for his service to the EPA.  I wish him and his family the best in their future endeavors."  Defendant Wheeler's February 5, 2020, email was publicly disseminated midday on February 6, 2020, and reported by several news agencies including the Los Angeles Times.

After Plaintiff Stoker was no longer an EPA employee, on February 6, 2020, at approximately 9:00 p.m. EST, the Defendants launched an after-hours attack on his good name and reputation.  This highly unusual after-hours press release was a personal attack on Plaintiff Stoker that did nothing to serve any interest of any kind on the part of the EPA.  The Defendants maliciously disseminated the falsehoods that, "*…Mike was too interested in travel for the sake of travel and ignored necessary decision making required of a regional administrator… Although EPA leadership repeatedly requested Mike to simply conduct the basic responsibilities of his job, we regretfully and ultimately after many requests had to relieve him for severe neglect and incompetent administration of his duties.*"  As Plaintiff Stoker complied with the EPA's Travel Guidance Policy on every single instance of travel, and as a matter of law, it would be impossible for him to do what the Defendants alleged were the reasons for his termination.  Further, EPA Leadership never once reprimanded Plaintiff Stoker or raised any concerns about his job performance. Defendants' baseless, after-hours attack on Plaintiff Stoker's reputation was the result of personal disputes they had with him.

# **ARGUMENT**

## **1. At this Stage the Court Must Assume the Truth of Plaintiff's Allegations.**

The Westfall Act holds the Attorney General's certification shall "conclusively establish scope of office or employment *for purposes of removal*." 28 U.S.C. 2679(d)(2).  Upon a facial attack, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  <u>Fed'n of African Am. Contractors v. City of Oakland</u> 96 F.3d1204, 1207 (9th Cir. 1996).

On April 20, 2021, the United States filed a Notice of Substitution pursuant to 28 U.S.C. § 2679(d).  That notice included a Certification by Assistant United States Attorney David M. Harris that contends that Defendants acted within the scope of their employment in making the alleged statements.  If accepted, this Certification would be dispositive of Plaintiff Stoker's Complaint because a cause of action for defamation is not exempt from government immunity pursuant to the Federal Tort Claims Act. 28 U.S.C. § 2680(h). Given that the United States' Notice of Substitution is, in effect, a facial and potentially dispositive attack of Plaintiff Stoker Complaint, this Court must assume the truth of Plaintiff Stoker's allegations.

Plaintiff Stoker alleged that the Defendants were not acting within the scope of their employment when they prepared, approved of and maliciously made a knowingly untrue statement about him with the intent to cause him harm.  Therefore, the United States' Certification that the Defendants were acting within the scope of their employment in making their defamatory statement can only be true if the United States adopts the position that an intentional and malicious lie fueled by personal motivation is within the scope of federal employment.

If such a finding is made in this matter, it would create an unjust precedent that would not only allow, but encourage, federal employees to intentionally defame and disparage the good name of citizens without the fear of any repercussion.  Any finding that federal employees have blanket immunity to maliciously defame citizens would be directly opposite of Public Policy, which promotes liberty and justice for all.

**2. Defamation of a *Former* Employee is not a Risk Predictably Created by or Fairly Attributed to the Nature of the Scope of Defendants' Employment.**

"[T]he employer's liability extends beyond his actual or possible control of the employee to include risks inherent in or created by the enterprise." <u>Perez v. Van Groningen & Sons, Inc.</u> (1986) 41 Cal.3d 962, 968.  For the employer to be liable for an intentional tort, the employee's act must have a "causal nexus to the employee's work." The incident leading to the injury must be an "outgrowth" of the employment, "inherent in the working environment", "typical" or "broadly incidental" to the employer's business or "a generally foreseeable consequence" of the employer's business. <u>Montague v. AMN Healthcare, Inc.</u> (2014) 223 Cal.App.4th 1515, 1521.  In this matter, the Defendants' defamation of Plaintiff Stoker had no nexus to their work, was not an outgrowth of their employment, and was not typical, broadly incidental or a generally foreseeable consequence of their employment.

On February 5, 2020, while Plaintiff Stoker was still an EPA employee, Defendant Wheeler issued the statement, "I would like to thank Mike Stoker for his service to the EPA.  I wish him and his family the best in their future endeavors." This email was publicly disseminated during usual business hours on February 6, 2020, and was rightfully an outgrowth of employment, typical and broadly incidental to the EPA's business.  Further, it was predictably created by, and fairly attributable to, the nature of Defendants' employment.   However, the statement that the Defendants prepared, approved of and maliciously made after-hours on February 6, 2020, has no causal connection to their federal employment.

At approximately 9:00 p.m., EST on February 6, 2020, Defendants caused to be published in the national media a second, gratuitous statement that "…Mike was too interested in travel for the sake of travel and ignored necessary decision making required of a regional administrator… Although EPA leadership repeatedly requested Mike to simply conduct the basic responsibilities of his job, we regretfully and ultimately after many requests had to relieve him for severe neglect and incompetent

administration of his duties."  At this time, Plaintiff Stoker was no longer an EPA employee.  The Defendants had already issued their parting statement about Plaintiff Stoker, and this baseless attack intentionally subjected Plaintiff Stoker to shame, humiliation and financial hardship.

Defendants' malicious and knowingly false after-hours statement attacking Plaintiff Stoker, who was a citizen at the time, was not typical or broadly incidental to the EPA's business, nor was it a generally foreseeable consequence of its business.  As stated on its governmental website, "[t]he mission of EPA is to protect human health and the environment," not to destroy the good name and reputation of those who diligently and prudently served its stated interests.

### 3. Defendants Inflicted Injury based on Personal Malice and Were Not Acting Within the Scope of Their Employment.

If an employee's tort is personal in nature, attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior.  The subsequent losses do not foreseeably result from the conduct of the employer's enterprise and so are not fairly attributable to the employer as a cost of doing business. Farmers Ins. Grp. v. Cnty. of Santa Clara (1995) 11 Cal. 4th 992, 1004.

Defendants' second and unnecessary statement was a personal attack on Plaintiff Stoker that did nothing to advance the official business of the EPA. Further, this statement was knowingly false at the time it was made.  The EPA's Travel Guidance Policy made it impossible for Plaintiff Stoker to do what he was accused of doing.  All of his travel was approved at two (2) levels within the EPA, first by either the Southwest Region Deputy Regional Administrator or Assistant Regional Administer, and then by the EPA's Travel Office in Cincinnati.  Plaintiff Stoker could not have been "…too interested in travel for the sake of travel" as he followed and strictly adhered to the EPA's Travel Guidance Policy on every single instance of travel.  Further, Defendants' statement that "although EPA leadership repeatedly

requested Mike to simply conduct the basic responsibilities of his job, we regretfully and ultimately after many requests had to relieve him for severe neglect and incompetent administration of his duties" is an outright lie.  Never once was Plaintiff Stoker reprimanded by anyone at the EPA.   Furthermore, at no time between Plaintiff Stoker's appointment and termination did any of the Defendants ever advise him, in writing or verbally, that they had concerns regarding his travel schedule, that they believed his travel was negatively affecting his official responsibilities, or that he was neglectful or incompetent in the administration of his duties.

Defendants' outright lies are personal in nature.  They have a natural tendency to injure Plaintiff Stoker in his name, character and profession.  Thus the Defendants could not have been acting within the scope of their employment when they caused to be issued a second, after-hours attack on Plaintiff Stoker that they knew was patently false.

## 4. The Former Commander in Chief's Allegedly Defamatory Statements Were Not Within Scope of Employment, and Neither are Defendants'.

The Second District Court Case entitled E. Jean Carroll v. Donald J. Trump is persuasive authority.   Ms. Carroll brought a Defamation suit against President Trump in his individual capacity for calling her a liar and denying they ever met.  These allegedly defamatory statements were made while President Trump held office.  Ultimately, this District Court ruled that President Trump's statements were not within the scope of his employment.  In its analysis, the Court relied on several cases that stand for the proposition that a federal employee who acted with personal motives in making defamatory statements was acting outside the scope of their employment.

It is black letter law, an employee acts outside the scope of employment if their conduct is "too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228 (1958).   Courts have long recognized that "[t]he outrageous quality of an employee's act may well be persuasive in considering whether his motivation was purely personal." Penn Cent. Transp. Co. v. Reddick, 398 A.2d 27, 31 (D.C.

1979). "[T]he fact that the servant acts in an outrageous manner or inflicts a punishment out of all proportion to the necessities of his master's business is evidence indicating that the servant has departed from the scope of employment in performing the act." Restatement (Second) of Agency § 228 (1958).   This rule applies with particular force in suits involving "an intentional tort," which "by its nature is willful and thus more readily suggests personal motivation." Jordan v. Medley, 711 F.2d 211, 215 (D.C. Cir. 1983).  These persuasive authorities hold that when an employee acts for personal reasons, their conduct falls outside the scope of their employment.

Furthermore, California law holds that employees who engage in malicious or tortious conduct, or who substantially deviate from their duties for a personal purpose, do not act within the ordinary scope of the employment.  Mary M. v. City of Los Angeles (1991) 54 Cal.3d 202; Lisa M. v. Henry Mayo Newhall Memorial Hospital (1995) 12 Cal. 4th 291, 296; Armenta v. Churchill (1954) 42 Cal.2d 448, 267.  The relevant chronology of events makes it objectively clear that the Defendants were not acting within the scope of their employment when their defamatory statements were made.

Between the time of Plaintiff Stoker's appointment with to EPA and his termination he was never once reprimanded by anyone at the EPA.  He was never advised about concerns regarding his travel schedule or a dereliction of his official duties.  All of the reliable evidence, or lack thereof, points to the contrary.  Defendant Jackson and EPA Spokesperson Michael Abbound previously defended Plaintiff Stoker's travel, citing it was required of him in his official duties. Additionally, an inquiry made by the Inspector General concluded that all of Plaintiff Stoker's travel was appropriate and related to his responsibilities.  Simply, there is no evidence in support of the Defendants' defamation[1].

---

[1]It must also be noted that Plaintiff Stoker's two (2) Freedom of Information Act Requests submitted on July 8, 2020, and October 16, 2020, respectively, sought evidence in support the Defendants' malicious, after-hours statement of February 6, 2020.  To date, the EPA has not provided a single document.  The inference that must be drawn is that no documents exist to support the Defendants' defamation or that the requested documents would only further support Plaintiff Stoker's claims.

On the day of Plaintiff Stoker's termination he was not provided with a reason despite his request for one. Defendant Wheeler then issued a typical statement during business hours that thanked Plaintiff Stoker for his service and wished him well.  This parting statement was an outgrowth of, an incidental to, the EPA's business.  However, what followed was too outrageous and too little actuated by a purpose to serve the EPA, which ultimately inflicted an unwarranted punishment to Plaintiff Stoker out of all proportion to the necessities of its business.

The day after Plaintiff Stoker's termination, February 6, 2020, he issued his "All Hand" letter to his former staff. The letter cited potential clashes with leadership for his dismissal and his "…gut feeling it is and was 100% personal."  Then, at approximately 9:00 p.m. EST, Defendants issued their patently false statement.  The outright lies were levied when all of the evidence pointed to the contrary of their allegations.  This willful, shameful and calculated personal attack on Plaintiff Stoker was fueled by the Defendants' collectively singular motive to discredit and destroy his good name.  This outrageous statement did nothing to further the interests of the EPA, as its official business pertaining to Plaintiff Stoker's dismissal had already concluded.

Further, Public Policy promotes the truth and only the truth in a second statement by the Defendant's would have served the EPA and its interests.  As all of the credible evidence, and lack thereof, proves that the Defendants' statements were outright lies, they could not have been acting within the scope of their employment when they needlessly sought to destroy Plaintiff Stoker's good name and reputation.

Very telling of the Defendants' malicious lies is the fact that just hours before the Defendants' after-hours attack of February 6, 2020, EPA Spokesman Michael Abbound was specifically asked, "[w]as travel any part of the reason for Mr. Stoker's termination?" To which Mr. Abboud responded, "[a]bsolutely not."

 The Defendants' malicious and tortious conduct was a substantial deviation from their duties, was done for personal purposes, and was not an act within the ordinary scope of their employment.

**5.  None of the Policy Goals of the Vicarious Liability Doctrine - Preventing Future Injuries, Assuring Compensation to Victims, and Spreading Losses Equitably - Would be Furthered by Applying the Doctrine in the Circumstances here because the United States faces Zero Liability.**

Applying the respondeat superior doctrine here will encourage and promote, not deter, similar injuries.  As discussed above, applying the doctrine in this matter will only allow, and encourage, federal employees to intentionally defame and disparage the good name of citizens without the fear of any repercussion.  Additionally, applying the doctrine in this matter will only deny compensation to a victim since Plaintiff Stoker's cause of action for defamation is not exempt from government immunity pursuant to the Federal Tort Claims. Lastly, applying the respondeat superior doctrine here will not spread losses equitable, and Plaintiff Stoker will be without recourse for the injuries and damages willfully and maliciously inflicted by the Defendants.  It would be unfair and inconsistent with the basic rationale of respondeat superior to impose liability on the United States in this context.

**6.  At a Minimum, it is at Least a Question for the Trier of Fact whether the Defamation of a Former Employee comes within the Doctrine of Respondeat Superior.**

In California, the question of scope of employment is ordinarily one of fact for the jury to determine." <u>Mary M. v. City of Los Angeles</u> (1991) 54 Cal.3d 202, 221. Plaintiff Stoker has met his burden in showing why the Defendants' actions were not within the scope of their employment.  He requests that this Honorable Court ultimately allows a jury, after conducting discovery[2], to decide whether or not Defendants Wheeler, Benevento, Jackson and Schiermeyer were acting within the scope of their employment at times material to the incident alleged in the Complaint.

---

[2] Although Plaintiff Stoker believes that all four Defendants are similarly situated, they may not be identically situated. Allowing discovery, even if only limited, on the issue of scope of employment would help any trier of fact make a sound determination for each individual Defendant.

**7.  If Reasonable Minds may Differ as to the Proper Resolution of the Issue, it Should Not be Resolved as a Matter of Law.**

Whether the Defendant's Defamation of Plaintiff Stoker arose within the scope of employment is, itself, a disputed factual question, even if the Parties agree on other predicate facts.  Given the inequity, and frustration of the purposes of the doctrine, that would follow its application in this matter, and for all the reasons stated herein, it is requested that this Court:  (1) Find that Plaintiff Stoker has met his burden in showing that the Defendants, based on the present evidence and California law, were not acting within the scope of their employment; or alternatively (2) Allow at a minimum limited discovery on the issue of course and scope of employment before making its determination.

Dated: May 11, 2021          LAW OFFICE OF JORDAN D. HANKEY
                             By:    /s/ *Jordan D. Hankey*
                                    Jordan D. Hankey, Attorney for Plaintiff
                                    Michael B. Stoker