TRACY L. WILKISON
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
JILL S. CASSELMAN (Cal. Bar No. 266085)
Assistant United States Attorney
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-0165
        Facsimile: (213) 894-7819
        E-mail: Jill.Casselman@usdoj.gov

Attorneys for Defendant
United States of America

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL B. STOKER, | Case No. 2:21-cv-00733-JAK-E |
| Plaintiff, | |
| v. | **UNITED STATES' RESPONSIVE BRIEF REGARDING PLAINTIFF'S CHALLENGE TO UNITED STATES' CERTIFICATION AND NOTICE OF SUBSTITUTION** |
| ANDREW R. WHEELER, DOUGLAS BENEVENTO, RYAN JACKSON, CORRY SCHIERMEYER; and DOES 1 through 20, inclusive, | |
| Defendants. | Honorable John A. Kronstadt |

Pursuant to the Court's April 28, 2021 Minute Order regarding Plaintiff's Objections to Notice of Substitution (ECF 12), the United States of America hereby respectfully submits the following brief in response to Plaintiff's "Opposition and Objection to Notice of Substitution" (ECF 9), "Supplemental Opposition to Notice of Substitution" (ECF 10), and "Brief in Support of His Contention That Defendants Wheeler, Benevento, Jackson, and Schiermeyer Were Not Acting Within the Scope of Their Employment" (ECF 13).

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff brought the instant defamation action against four former employees of the Environmental Protection Agency ("EPA") claiming that they defamed him by releasing an EPA press statement regarding the reason for Plaintiff's termination from the EPA. Pursuant to 28 U.S.C. § 2679(d)(1) the Attorney General, through his delegee, certified that these EPA employees were acting within the scope of their employment with the United States at all times material to the incidents alleged in the Complaint. Plaintiff now seeks to challenge the United States' statutorily authorized certification, as he acknowledges that substitution of the United States as defendant is fatal to his claim.

It is Plaintiff's burden to prove that the Attorney General's certification decision was erroneous.[1] But Plaintiff cannot meet this burden where, as here, the Complaint allegations, judicially noticeable facts, and evidence submitted by Plaintiff all confirm that the United States' certification and substitution were demonstrably proper. Neither discovery nor an evidentiary hearing are warranted as the material facts are widely known and not capable of reasonable dispute.

Plaintiff's certification challenge is based on a fundamental misunderstanding of respondeat superior law: Simply alleging wrongful conduct is not sufficient to establish that an employee's conduct was outside the scope of employment. Indeed, scope of employment is decided by examining **whether the risk was one that may fairly be regarded as typical of, or broadly incidental to, the enterprise undertaken by the employer.** Here, there is no real dispute that the named individuals were employed by the EPA and communicated with the press (and/or assisted in crafting press statements) about the termination of a high-level EPA employee.  Therefore, whether wrongful or not, their conduct was "broadly incidental" to their duties. Thus, the United States'

---

[1] Plaintiff's assertion that his Complaint allegations must be assumed true for purposes of his certification challenge (ECF 13 at 3) is contrary to law. *See Osborn v. Haley*, 549 U.S. 225, 231 (2007); *Billings v. U.S.*, 57 F.3d 797, 800 (9th Cir. 1995).

1    certification and substitution were proper, and Plaintiff's challenge should be rejected.

2    **II.**    **FACTUAL BACKGROUND**

3        Plaintiff filed suit on January 27, 2021, as a tort action against four named

4 individual defendants, including then Acting EPA Administrator Andrew R. Wheeler,

5 EPA Chief of Staff Ryan Jackson, EPA Associate Deputy Administrator Douglas

6 Benevento, and Associate Administrator for the EPA's Office of Public Affairs Corry

7 Schiermeyer. *See* ECF 1.[2] On April 21, 2021, the United States filed a Notice of

8 Substitution, based upon the April 20, 2021 certification that the named defendants were

9 acting within the scope of their employment with the EPA.[3] On April 22-23, 2021,

10 Plaintiff filed briefing challenging the United States' certification. ECF 8, 9. On April

11 28, 2021, the Court issued a Minute Order providing Plaintiff with a further opportunity

12 to brief this issue and submit evidence in support of his position. On May 11, 2021,

13 Plaintiff submitted briefing and evidence. ECF 13.

14 _____

15      [2] As acknowledged by the Complaint, Wheeler was the acting EPA administrator
16 and Plaintiff's supervisor, (*see* ECF 1 at ¶ 12) and Benevento and Jackson contacted
Plaintiff to terminate his employment with EPA (ECF 1 at ¶ 18). The fact of the named
17 defendants' EPA employment, and their position titles, are not capable of reasonable
dispute, and can be found throughout the news reporting referenced by Plaintiff's
18 Complaint. *See. e.g.,* https://news.bloomberglaw.com/environment-and-energy/epa-says-
ex-region-9-chief-was-incompetent-abused-travel;
19 https://apnews.com/article/1683e19392b950d3c91ee589924968c8;
https://abcnews.go.com/Politics/wireStory/accusations-follow-epas-ouster-california-
20 regional-boss-68833300.)

21      Additionally, publicly accessible archived records of EPA's website confirm both
the employment of the named individuals and their position titles. *See, e.g.,*
22 https://archive.epa.gov/epa/senior-leaders-calendars/calendar-administrator-andrew-
wheeler.html; https://www.epa.gov/history/chronology-epa-administrators;
23 https://archive.epa.gov/epa/senior-leaders-calendars/calendar-doug-benevento-associate-
deputy-administrator.html; https://www.epa.gov/sites/production/files/2019-
24 05/documents/jackson_calendar_start-jun13.2018.pdf;
https://archive.epa.gov/epa/newsreleases/administrator-wheeler-announces-new-staff-
25 additions-and-updated-assignments.html. (Last accessed on May 18, 2021.)

26      As the fact of the named individuals' EPA employment as of February 6-7, 2020
is not disputed by Plaintiff and is readily determined from Plaintiff's briefing and
27 documents referenced in the Complaint, Defendant United States respectfully requests
that the Court take judicial notice of these facts.

28      [3] The United States also filed a proposed order to correct the caption, which is
pending before the Court. ECF 8-1.

III.  **LEGAL STANDARD FOR CERTIFICATION AND SUBSTITUTION OF THE UNITED STATES AS DEFENDANT FOR STATE LAW TORT CLAIMS ASSERTED AGAINST FEDERAL EMPLOYEES**

In a civil action against a federal employee, the United States Attorney General may certify that the employee was acting in the scope of his employment at the time of the incident on which the claim is based. 28 U.S.C. § 2679(d)(1). Once certification is made, the Federal Employees Liability Reform and Tort Compensation Act ("FELRTCA"), more commonly known as the "Westfall Act," requires the substitution of the United States as the defendant. 28 U.S.C. § 2679(d)(1) ("Upon certification by the Attorney General . . . , any civil action [arising out of a government employee's official duties] shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant."); *see also Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993). "Under the terms of FELRTCA, the substitution of the United States leaves the plaintiff with a single avenue of recovery, the Federal Tort Claims Act ('FTCA'), 28 U.S.C. §§ 1346, 2671 et seq." *Green*, 8 F.3d at 698.

A plaintiff may attempt to challenge the Attorney General's certification decision. But there is a presumption in favor of upholding the Attorney General's certification. *Green*, 8 F.3d at 698. **A party seeking to challenge the Attorney General's decision to certify that an employee was acting within the scope of his employment bears the burden of adducing evidence that disproves the accuracy of the Attorney General's decision**. *Id.*

When a plaintiff challenges the Attorney General's scope of employment certification, "[t]he United States . . .  must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn v. Haley*, 549 U.S. 225, 231 (2007); *see also Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995) ("Certification by the Attorney General is prima facie evidence that a federal employee was acting in the scope of her employment at the time of the

incident and is conclusive unless challenged."). In determining whether a United States employee acted within the scope of his office or employment, the court looks to the respondeat superior law of the state in which the alleged tort occurred. *Id.*

## IV. **ARGUMENT**

### A. **Plaintiff Has Not—and Cannot—Establish that the Named Individuals Acted Outside the Scope of their Employment with the EPA.**

It is Plaintiff's burden to prove that the certification and substitution of the United States should be overturned. Here, he has not done so. Nor could he do so, because the Complaint allegations, judicially noticeable facts, and Plaintiff's evidence demonstrate that the certification was appropriate.

### 1. **Plaintiff's Complaint and Briefing Confirm that the Named Individuals Acted Within the Scope of Employment.**

The question of whether an individual was acting within the course and scope of his employment is a matter of state law. *See Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 876 (9th Cir. 1992). Plaintiff primarily cites to California law regarding the scope of employment.[4] In California, an employee acts within the scope of employment when: (1) the challenged act was required by or broadly incidental to the employee's duties; or (2) the employer reasonably could have foreseen the employee's conduct. *Sunderland v. Lockheed Martin Aeronautical Sys. Supp. Co.*, 130 Cal. App. 4th 1 (2005); *Rodgers v. Kemper Constr. Co.*, 50 Cal. App. 3d 608, 618-19 (1975). Where

---

[4] Here, the named Defendants were located variously in Washington D.C. or Texas, and the alleged harm was purportedly suffered by Plaintiff in California where he is a resident. In any event, there is no conflict between the laws of these jurisdictions, because the named employees were acting within the scope of their employment under the laws of all three jurisdictions *See, e.g., Council on Am. Islamic Rels., Inc. v. Ballenger*, 444 F.3d 659 (D.D.C. 2006) (employee is working within scope of employment if: (1) It is of the kind he is employed to perform; (2) It occurs substantially within authorized time and space limits; (3) It is actuated, at least in part, by a purpose to serve the master, and; (4) If force is intentionally used by the servant against another, use of force is not unexpectable by the master); *Weinberg v. Johnson*, 518 A.2d 985 (D.C. Ct. App. 1986) (Conduct only needs to be motivated in part to serve the master.); *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) (Employee's acts must be of "the same general nature as the conduct authorized or incidental to the conduct authorized" to be within the scope.)

5

the employee is combining his own business with that of his employer, "no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer." *John R. v. Oakland Unified Sch. Dist.*, 48 Cal.3d 438, 447 (1989)*; see also Farmers Ins. Grp. v. County of Santa Clara*, 11 Cal. 4th 992, 1004 (1995) (test for respondeat superior is whether, "in the context of the particular enterprise[,] an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business").

Under this rule, even tortious conduct that is willful, malicious, or violates an employer's express orders may still be within the scope of employment. *Farmers, supra*, at 1004; *see also Mary M. v. City of Los Angeles*, 54 Cal.3d 202 (1991). For example, an assault or battery committed by an employee is within the scope of employment even if it violates the employer's direct orders if it results from "a dispute arising out of the employment." *Carr v. Wm. C. Crowell Co.*, 28 Cal.2d 652 (1946) (employee of general contractor who threw hammer at employee of subcontractor during work-related dispute acted within scope of employment); *Rodgers, supra*, at 618-19 (employee alleged to have committed assault after work hours and out of personal malice unrelated to work nonetheless acted within scope of employment). Only where an employee "substantially departs from his duties for purely personal reasons" will vicarious liability fail to attach. *See John R. v. Oakland Unified Sch. Dist.*, 48 Cal.3d 438 (1989); *see also Wilson v. Drake*, 87 F.3d 1073, 1076–78 (9th Cir. 1996) (alleged false imprisonment and battery arising out of workplace dispute was within the scope of employment); *Trap v. United States*, 2016 WL 6609212, at *4 (C.D. Cal. Mar. 7, 2016) (even where individual defendant acted with personal animosity towards plaintiff, doing so while attending to duties as a government employee means defendant acted within the course and scope of employment.)

Multiple courts have applied this test in the context of defamation claims and concluded that allegedly defamatory statements can be made within the scope of

1    employment. *See, e.g., CAIR v. Ballenger,* 444 F.3d 659, 664–65 (D.C. Cir. 2006)

2    (Congressman was acting within the scope of his "authorized duties" in making

3    allegedly defamatory statement when speaking to the press about reasons for separation

4    from his wife); *Cloonan v. Holder*, 602 F. Supp. 2d 25, 34 (D.D.C. 2009) ("Cloonan's

5    allegations…are not facts that rebut the certification but rather are conclusory assertions

6    that Barnes' conduct must have been outside the scope of his employment because he

7    both violated the Privacy Act and defamed her."); *Operation Rescue Nat'l v. United*

8    *States*, 975 F. Supp. 92, 108–09 (D.Mass.1997) (Senator's allegedly defamatory

9    "response to questions posed by the media" immediately following a fundraiser falls

10   within the scope of his employment.), *aff'd,* 147 F.3d 68, 71 (1st Cir.1998).

11        Here, Plaintiff's allegations and evidence leave no room for doubt that the named

12   individuals were EPA employees acting in a manner typical of or broadly incidental to

13   their employment. The Complaint alleges that Wheeler was the acting EPA administrator

14   and Plaintiff's supervisor, (ECF 1 at ¶ 12), and Benevento and Jackson were the people

15   who contacted Plaintiff to terminate his employment with EPA (ECF 1 at ¶ 18). Plaintiff

16   further alleges that named individuals "either prepared, approved of, or made false and

17   injuries statements about Plaintiff Stoker that were publicly transmitted to several

18   national news agencies" ECF 1 at ¶ 19. Plaintiff's briefing confirms that the statement

19   was an EPA "press release" explaining the reasons for his termination, not independent

20   statements made by the named individuals. *See* ECF 13 at 2. Such press releases arise

21   out of, and are incidental to, the named individuals' employment with EPA.

22        Plaintiff concedes as much in pointing to the press statement issued by Wheeler on

23   February 5, 2020 as an example of an action *within* the scope of his employment. ECF

24   13 at 4. The challenged press release is not categorically different. Press statements

25   about an employee termination, even if wrongful, present a risk that is "fairly regarded

26   as typical of or broadly incidental to the enterprise undertaken by the employer.'"

27   *Rodgers*, *supra*, at 618-19.

28

1
2

### 2.   Allegedly "Wrongful" or "Harmful" Conduct Does Not Impact the Course and Scope Determination.

3       Plaintiff's briefing relies upon the incorrect premise that individuals who make
4   allegedly intentional and harmful statements must be acting outside the scope of their
5   employment. *See* ECF 9 at p. 3; ECF 13 at 3. But under California's respondeat superior
6   law, discussed *supra*, whether the named defendants supposedly broke various laws or
7   rules does not determine their scope of employment. *See, e.g., Pelletier, supra*, 968 F.2d
8   at 876-77 (9th Cir. 1992). Here, there is no evidence that the named individuals conduct
9   was "unusual or startling" or atypical of their employment. *See Farmers, supra*, at 1004.
10  Rather, it was entirely foreseeable that EPA would respond to press inquiries about the
11  termination of a high-level employee. Plaintiff cites no authorities suggesting otherwise.

12      Indeed, the case law relied upon by Plaintiff for the proposition that outrageous
13  conduct is relevant to the scope determination (*see* ECF 13 at 5-7,) are inapposite as they
14  involve extremely aberrant conduct, such as sexual misconduct. Courts consistently find
15  such conduct to be a substantial deviation from employment duties such that vicarious
16  liability will not attach. *See, e.g., Farmers, supra*, at 1006 (collecting cases); *Jordan v*
17  *Medley*, 711 F.2d 211, 215 (D.C. Cir. 1983). This case, involving the drafting and
18  dissemination of a press release about the termination of an employee, does not fit into
19  that mold.

20
21

### 3.   Plaintiff's Job Performance and Status as a Former EPA Employee are Irrelevant to the Course and Scope Determination.

22      It is of no moment that Plaintiff claims to have had a satisfactory job performance
23  or was a former EPA employee at the time the press statement was issued. Indeed,
24  Plaintiff cites no authority suggesting that only statements about underperforming
25  current employees come within the scope of employment, nor would such a rule make
26  any sense. What is key is that the named individuals were communicating with the press
27  about the termination of an employee, whether or not it involved exemplary,
28  unremarkable, current, or former employees. Here, that standard is met.

### 4. *Carroll v. Trump* is Distinguishable.

Plaintiff's reliance on *Carroll v. Trump*, 2020 WL 6277814, at *28 (S.D.N.Y. Oct. 27, 2020), is misplaced. There, the Court found that then President Trump was not within the scope of his employment with the United States in making defamatory statements regarding an alleged sexual assault of Plaintiff in the 1990s. The Court's reasoning was twofold: First, the President, unlike other public officials, is not an "employee of the Government" within the meaning of relevant statutes. Second, even if he were deemed an employee, the challenged statements had **"no relationship to the official business of the United States."** *Id.* By contrast, here, the challenged statements pertain to the rationale for terminating a high-level EPA appointee. This unquestionably relates to the business of the EPA.

### B. Plaintiff is not Entitled to Discovery, an Evidentiary Hearing, or a Jury on the Attorney General's Certification Decision.

Plaintiff asserts that he should be afforded discovery, an evidentiary hearing, and ultimately, a jury trial on the course and scope issue. *See* ECF 9 at p. 4; ECF 10 at pp. 2-3; ECF 13 at 9. No such steps are necessary or appropriate here.

Neither discovery nor an evidentiary hearing are required to determine whether an employee was acting within the scope of employment when the Complaint allegations and evidence establish as a matter of law that the certification was proper. *See Pelletier, supra*, at 874 (district court is authorized, *but not required*, to conduct an evidentiary hearing to resolve disputed factual questions challenging a scope of employment certification); *Salah v. Bush*, 848 F.3d 880, 892 (9th Cir. 2017) (affirming substitution as a matter of law without evidentiary hearing where facts alleged in complaint show that the employee acted in the scope of employment.); *McLachlan v. Bell,* 261 F.3d 908, 910-913 (9th Cir. 2001) (evidentiary hearing properly denied when evidence alleged in the complaint supported certification); *Rosenbaum v. Burgess*, 2007 WL 623795 *8 (D. Alaska 2007) (an evidentiary hearing is not necessary where there are no material issues of fact regarding the scope of employment); *Gutierrez de Martinez v. D.E.A.*, 111 F.3d

1148, 1149 (4th Cir. 1997) (with no issue in dispute as to a material fact bearing on the scope question, the court need not conduct an evidentiary hearing).

Here, as indicated below, Plaintiff's Complaint is sufficient to show that the named defendants were acting within the scope of their employment. *See* ECF 1 at ¶¶ 12-21. Plaintiff's briefing and evidence contain nothing suggesting otherwise. Indeed, the evidence submitted confirms the fact of these individuals' EPA employment, and actions taken that were typical of, or broadly incidental to, that employment.

Moreover, Plaintiff is not entitled to a jury trial on the threshold question of whether the United States was properly substituted in as a defendant in an FTCA case. Such an assertion ignores the clear statutory language and case law concerning challenges to certifications, and would allow an end-run around the subject matter jurisdiction limitations implicated by this case. Plaintiff has not and cannot cite any applicable authority in support of this jury trial demand.

## V.    CONCLUSION

For these reasons, the United States respectfully requests that Plaintiff's challenge be rejected, and that the Court not overturn the Attorney General's certification.

Dated: May 18, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

   */s/ Jill S. Casselman*
JILL S. CASSELMAN
Assistant United States Attorney

Attorneys for Defendant
United States of America